**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RAJESH PERSAD,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-25-688** |
| **NAVAL SURFACE WARFARE CENTER, INDIAN HEAD DIVISION, *et al.*,** | * | |
| | * | |
| **Defendant.** | | |

## MEMORANDUM OPINION

Rajesh Persad claims his former employer, the Naval Surface Warfare Center, Indian Head Division (the "Agency"), and his former supervisors, Dr. Phillip Cole, Emily Leitsch, and Aaron Gentilli, discriminated against him based on his race and color, retaliated against him, and created a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and retaliated against him, in violation of the Whistleblower Protection Act of 1989, 5 U.S.C. 2302(b)(8)–(9) ("Whistleblower Protection Act" or "WPA"). The defendants move to dismiss Persad's claims for failure to state a claim. The motion is granted, and Persad's amended complaint is dismissed with prejudice.[1]

## I. Background

Persad filed this employment discrimination lawsuit on March 3, 2025. ECF 1. The Agency moved to dismiss Persad's complaint for failure to state a claim pursuant to Federal Rule of Civil

---

[1] Persad incorrectly named the Agency and its employees as defendants; he should have named the head of the Agency as the defendant. *See* 42 U.S.C. § 2000e-16(c) (2016) ("(A]n employee . . . may file a civil action" in which "the head of the department, agency, or unit, as appropriate, shall be the defendant."). However, this pleading defect is inconsequential because even if Persad cured it, his claims still would be dismissed for failure to state a claim.

Procedure 12(b)(6). ECF 10. The Court held an on-the-record call with the parties on December 16, 2025 to discuss the pending motion to dismiss. *See* ECF 13. The Court informed Persad, who is not represented by counsel, that he could file an amended complaint that attempted to cure the deficiencies in his initial complaint by adding specific details to his amended complaint and by clarifying in the body of the pleading the significance of the exhibits he attached to his initial complaint. *See id*. Persad then filed an amended complaint. ECF 14. Believing Persad had not cured the pleading deficiencies, the defendants moved to dismiss the amended complaint for failure to state a claim. ECF 15. The Court denied the initial motion to dismiss as moot in light of the amended complaint and the second motion to dismiss. ECF 17. Persad opposes the motion to dismiss his amended complaint. ECF 18. The Agency did not file a reply.

Because Persad does not have counsel, the Court liberally construes his pleadings. *See Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 618 (4th Cir. 2020). In doing so, when deciding the motion to dismiss the amended complaint, the Court considers the allegations in Persad's initial and amended complaints, ECF 1 & 14, and the exhibits he attached to his initial complaint, ECF 1-4. *See Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025) ("In order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff." (citation modified)).

Persad is Black and Caribbean. ECF 14, ¶ 7.[2] He was employed by the Agency as a "Manager, ND-0801-5" within the "M Department." *Id.* ¶¶ 1–2. At all relevant times, Dr. Cole,

[2] Persad reported he is "Latin American & South Asian" in the EEO Pre-Complaint Intake Document. ECF 1-4, at 92.

Leitch, and/or Gentilli supervised Persad and "were involved in or approved personnel actions affecting his employment[.]" *Id.* ¶ 3.

Persad "engaged in protected activity by raising concerns regarding race-based discrimination and by instructing an employee to report sexual harassment." *Id.* ¶ 4. For example, Persad wrote a letter to Congressman Steny Hoyer raising concerns about the Agency's prior mistreatment of African American employees. *See* ECF 1-4, at 67–70 (July 24, 2022 letter from Persad to Congressman Hoyer). Persad attached to his initial complaint his "Special Award" nomination of a female African American colleague, *id.* at 80, and a text message from another female African American colleague in which she stated that she had been "unaccepted" due to her race and gender, *id.* at 81. In his letter to Congressman Hoyer, Persad cited these two documents as evidence of his "concern[s] . . . relate[d] to race relations and the treatment of African Americans." *Id.* at 67. Persad alleges that his supervisors, Cole, Leitch, and Gentilli, knew about his protected activity. *Id.* ¶ 5.

Persad claims the defendants retaliated against him for his protected activity and discriminated against him based on his race and color. Specifically, Persad alleges that he was excluded from key leadership meetings and decision-making activities when he was a manager and should have been included; that Leitch issued him an unwarranted letter of reprimand; that he was transferred to an undefined position without clear duties, which diminished his "professional standing"; that he received unfair performance evaluations; that he was denied promotions and advancement opportunities; and that "[a]dditional retaliatory actions" were taken against him after he reported "discrimination and safety concerns." *Id.* ¶ 8. Persad claims these actions "materially altered the terms, conditions, and privileges" of his employment. *Id.* ¶ 9. According to Persad, his

supervisors—Cole, Leitch, and Gentilli—took, directed, approved, or permitted these discriminatory and retaliatory actions. *Id.* ¶ 10.

As a result of these discriminatory and retaliatory actions, Persad experienced "severe workplace stress" and suffered symptoms associated with Barrett's esophagus. *Id.* ¶¶ 12–14. Persad "left his employment" in June 2024. *Id.* ¶ 15. Persad filed an Equal Employment Opportunity ("EEO") complaint alleging discrimination and retaliation on June 27, 2024. *Id.* ¶ 17.

In his amended complaint, Persad specifically references five exhibits attached to his initial complaint and explains their relevance to his claims. *See* ECF 14, at 3. He alleges the first three exhibits show adverse employment actions: a letter of reprimand from Leitch; an unfair performance evaluation; and an undesirable transfer. *Id.* The fourth exhibit—Persad's EEO Complaint and related correspondence with the Agency—shows he engaged in protected activity. *Id.* He alleges the fifth exhibit—his letter to Congressman Hoyer—shows his "contemporaneous reporting of civil rights violations, systemic discrimination, retaliation, and workplace safety concerns, and corroborates the timing and nature of the adverse actions allege." *Id.*

Persad does not identify the claims he asserts in his amended complaint. In his initial complaint, however, he asserted claims for employment discrimination, retaliation, and hostile work environment under Title VII, and a retaliation claim under the Whistleblower Protection Act. ECF 1, ¶¶ 20–25, 28–32. Because the allegations supporting these claims asserted in his initial complaint also appear in his amended complaint, the Court construes his amended complaint to assert these claims too.[3]

---

[3] In his initial complaint, Persad also asserted a claim for "failure to respond to EEO Complaint." ECF 1, ¶¶ 23–32. In their initial motion to dismiss, the defendants correctly put Persad on notice that such a claim could not survive a motion to dismiss. *See* ECF 10-1, at 5–8. Because Persad omitted any reference to this claim in his amended complaint, the Court concludes that he wisely abandoned it.

## II. Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (citation modified).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and "draw all reasonable inferences in favor of" the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022) (citation modified). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation modified). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (citation modified). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citation modified).

The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); Fed. R. Evid. 201(b). The Court will consider the dozens of pages of exhibits that Persad attached to his initial complaint.

Persad does not have counsel. "[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). But "liberal construction [of pro se pleadings] does not require [the court] to attempt to discern the unexpressed intent of the plaintiff"; the court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation modified). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citation modified).

## III. Discussion

### A. Color and Race Discrimination

Title VII forbids employers from "discharg[ing] any individual or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Persad claims he was discriminated against because of his color and race.

A plaintiff may "prove a claim of . . . discrimination under Title VII either through 'direct' or 'circumstantial' evidence." *Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 507 (4th

Cir. 2023) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983)). Absent direct evidence of discrimination, a Title VII plaintiff may prove discrimination by establishing a *prima facie* case of discrimination: "(1) membership in a protected class, (2) discharge, (3) while otherwise fulfilling [the employer's] legitimate expectations at the time of his discharge, and (4) under circumstances that raise a reasonable inference of unlawful discrimination." *Bing*, 959 F.3d at 617 n.8 (citation modified).

To state a discrimination claim, a plaintiff "need not plead a prima facie case of discrimination," but "reference to the prima facie case may nonetheless inform a court's evaluation of a motion to dismiss." *Wooten v. Univ. of Md., Balt.*, 733 F. Supp. 3d 402, 417 (D. Md. 2024). The allegations must be sufficient "to satisfy the elements of a cause of action created by" Title VII. *Bing*, 959 F.3d at 616 (citation modified). Moreover, the plaintiff must plausibly allege that the "relevant decisionmaker was motivated by" the plaintiff's protected trait. *Barnhill v. Bondi*, 138 F.4th 123, 131 (4th Cir. 2025).

Persad alleges that he is Black and Caribbean, which are protected classes. Persad also alleges that his performance met his employer's expectations. *See* ECF 1-4, at 15–18 (year-end performance evaluations from April 2024 indicating Persad "meets expectations" in all "performance goals" save for "Provid[ing] Consistent and Quality Communications up and down the Chain of Command."). And, Persad alleges that he experienced two adverse employment actions: failure to promote and reassignment to a position with diminished responsibilities. *See Pearl v. Prince George's Cmty. Coll.*, No. PWG-18-777, 2019 WL 13388343, at *8 (D. Md. Sept. 23, 2019) ("Certainly, a failure to promote qualifies as an adverse employment action."); *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355–56 (2024) (holding reassignment to a non-

supervisory role is an adverse action when it is "disadvantageous" and leaves the plaintiff "worse off," though it need not have a "significant detrimental effect").[4]

Persad's discrimination claim fails at the fourth element: that the adverse actions occurred under circumstances giving rise to an inference of unlawful discrimination. This element may be met if the plaintiff identifies "similarly-situated employees outside the protected class [who] received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *see also Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (describing the fourth element in terms of "different treatment from similarly situated employees outside the protected class").

> While there is no bright-line rule for what makes two comparators similar for purposes of Title VII claims, courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.

*Johnson v. Balt. City*, 163 F.4th 808, 815 (4th Cir. 2026) (citation modified). To be sure, identification of similarly situated comparators is not required to prove a discrimination claim, "so long as [a Title VII plaintiff] can establish an inference of unlawful discrimination through other means." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir.), *as amended* (Aug. 11, 2017). The Court may infer discriminatory intent from "a general pattern of racial discrimination in the practices of a defendant." *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017).

[4] The Court need not decide whether the other alleged adverse actions in paragraph 8 of Persad's amended complaint qualify as adverse employment actions under Title VII because even if they do, Persad has not alleged those actions were made under circumstances giving rise to an inference of unlawful discrimination.

Persad has not adequately pled facts raising an inference of unlawful discrimination. Persad does not allege direct evidence of discrimination. Nor does he allege circumstantial evidence of discrimination. For example, he does not allege that similarly situated employees outside of his protected classes were treated differently than he was. Even when Persad's allegations are construed liberally, and in the light most favorable to him, they do not remotely suggest that the defendants failed to promote him, reassigned him to a lesser position, or took any action against him because he is Black or Caribbean. There are simply no facts in Persad's initial and amended complaints, including the exhibits attached to the initial complaint, from which the Court can plausibly infer that the defendants took an adverse employment action against him because of his protected traits. Persad fails to allege the fourth element of a Title VII discrimination claim.

Persad's discrimination claim is dismissed.

**B. Retaliation**

To state a claim for Title VII for retaliation, a plaintiff must plausibly allege "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Barnhill*, 138 F.4th at 132 (quoting *Coleman*, 626 F.3d at 190). "Protected activity" consists of having "opposed any practice made an unlawful employment practice" under Title VII or having "participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

Persad filed an EEO complaint alleging discrimination. This constitutes protected activity under Title VII. *See Seabrook v. Driscoll*, 148 F.4th 264, 272 (4th Cir. 2025). Persad also alleges that he engaged in less formal "protected activity by raising concerns regarding race-based discrimination and by instructing an employee to report sexual harassment." ECF 14, ¶ 4. The only

less formal protected activity specifically referenced in the amended complaint is Persad's July 24, 2022 letter to Congressman Hoyer, in which Persad complained about race-based discrimination at the Agency. *Id.* at 3. This qualifies as protected activity because it involves "voicing one's opinions in order to bring attention to an employer's discriminatory activities." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (citation modified).

Turning to the second element, an adverse employment action, the action must be "materially adverse," that is, it must be "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination." *Herkert v. Bisignano*, 151 F.4th 157, 165–66 (4th Cir. 2025) (citation modified). The same adverse actions that supported Persad's discrimination claim—failure-to-promote and reassignment to a role with diminished responsibilities—also qualify as adverse employment actions for his retaliation claim. Further, the Court will assume, without deciding, that the other alleged adverse actions in paragraph 8 of the amended complaint qualify as well: exclusion from key leadership meetings and decision-making activities when Persad was a manager; an unwarranted letter of reprimand; and unfair performance evaluations. ECF 14 ¶ 8. Thus, Persad has alleged adverse employment actions.

Even so, Persad's retaliation claim fails at the third element: causation. Causation may be established by a "particularly close [temporal] proximity" between the protected activity and adverse action, *Hall Haggins v. Wilson Air Ctr., LLC*, 163 F.4th 872, 881 (4th Cir. 2026), or by "the existence of facts that suggest that the adverse action occurred because of the protected activity," *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218–19 (4th Cir. 2022) (citation modified).

Persad alleges he filed his EEO complaint on June 27, 2024. He does not allege when, in relation to the filing of the complaint, the retaliation occurred. But the only plausible inference from Persad's allegations is that it occurred *before*, not after, he filed the EEO complaint. This is

because Persad alleges he left his employment at the Agency in June 2024, and he filed his EEO complaint on June 27, 2024. Even if Persad left the Agency on the last day of June, the Court cannot plausibly infer that any of the myriad adverse actions alleged in paragraph 8 of his amended complaint occurred during the last three days of his employment, which included a weekend. And even a cursory review of Persad's attachments to the initial complaint suggests that the alleged adverse actions occurred months before he filed an EEO complaint. For instance, it appears that Persad may have been reassigned to a role with diminished responsibilities on January 14, 2024. *See* ECF 1-4, at 28 (email from Gentili, the M3 Division head, to Persad advising him that he was being transitioned to M3 effective January 14, 2024). It also appears that Persad may have been denied a promotion and subject to an unfair performance evaluation in or before April 2024. *See id*. at 8 (Persad's Incentive Pay Reconsideration Request form, dated June 6, 2024, requesting reconsideration of his "promotion evaluation" and elsewhere describing this End Year Review as a "promotional assessment") & 18 (Persad's Performance Expectations 2024 End Year Review, signed by Gentili on April 8, 2024). And it appears that Persad may have been excluded from leadership meetings before April 2024. *See id.* at 17 (Persad's April 4, 2024 End Year Review, wherein Persad complained about only being "invited to Tuesday meetings and lack[ing] insight into other aspects of the project"). These alleged adverse actions occurred in January through April 2024—months *before* Persad filed his EEO complaint on June 27, 2024. Because these adverse actions predated the filing of the EEO complaint, they cannot possibly have been a retaliatory response to the filing of the complaint. Thus, Persad has not alleged he was retaliated against because he filed an EEO complaint.

Likewise, Persad has not alleged a causal connection between his July 24, 2022 letter to Congressman Hoyer complaining about race-based discrimination at the Agency and the adverse

employment actions. There is no temporal proximity between a letter sent in 2022 and adverse actions taken in 2024 that could give rise to an inference of causation. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (rejecting a Title VII retaliation claim because a three-month gap between protected activity and adverse employment action failed to satisfy temporal proximity); *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) ("[A] lapse of two months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation." (citation modified)). Persad also has not alleged any specific facts suggesting the adverse actions occurred because he sent the letter to Congressman Hoyer. Thus, the Court cannot plausibly infer that Persad's letter to a lawmaker complaining about race-based discrimination at the Agency caused the Agency to take allegedly adverse actions against him.

There is another reason why Persad's retaliation claim fails: He does not adequately allege that the individuals who took the adverse actions knew, when they acted, that Persad had filed an EEO complaint or sent the letter to Congressman Hoyer. Persad alleges, in conclusory terms, that his supervisors, Cole, Leitch, and Gentilli, were aware of his protected activities, *see* ECF 14, ¶ 5, but he does not state which protected activities they were aware of and when they became aware of them. Even if Persad had specified why he believes they knew he wrote the letter to Congressman Hoyer, Persad still could not allege causation because the allegedly adverse actions occurred well over a year after he sent the letter.

Persad's retaliation claim is dismissed.

### C. Hostile Work Environment

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

the victim's employment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation modified). To state a hostile work environment claim, a plaintiff must allege "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected trait]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (citation modified). A plaintiff also must allege that his protected characteristic was the "but for" cause of the unwelcome conduct. *Laurent-Workman*, 54 F.4th at 210.

Establishing the unwelcome conduct element "is not a high hurdle." *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018). The Fourth Circuit has explained that "an employee can demonstrate that certain conduct is unwelcome simply by voicing [his] objection[.]" *Id.* at 328–29.

The "severe or pervasive" element is not as easily established. It "has both a subjective and objective component." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 21). When deciding the objective component of a hostile work environment claim, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[C]omplaints premised on nothing more than rude treatment by

[coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor . . . are not actionable under Title VII." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (citation modified).

Persad does not allege that he was subjected to any "discriminatory intimidation, ridicule, [or] insult[.]" *Harris*, 510 U.S. at 21 (citation modified). Instead, Persad alleges the unwelcome conduct is the adverse actions: denial of a promotion, reassignment to a job with lesser duties, unfair evaluations and reprimand, and exclusion from key leadership meetings. *See* ECF 14, ¶ 8. The Court will assume, solely for purposes of the motion to dismiss, that these unfavorable personnel decisions were unwelcome conduct.

Even so, Persad's hostile work environment claim fails because he has not alleged the unwelcome conduct occurred because of his color or race or that it was sufficiently severe or pervasive to alter his conditions of employment and create an abusive environment. Persad merely alleges that "[s]evere workplace stress . . . caused by the discriminatory and retaliatory conduct" contributed to the onset of his Barratt's esophagus condition. *See* ECF 14, ¶¶ 12–14. This barebones, conclusory allegation about "severe workplace stress" caused by "discriminatory and retaliatory conduct" is insufficient to allege a severe and pervasive abusive work environment that altered his working conditions. *See* ¶¶ 12–14. In fact, on Persad's telling, his medical condition triggered by workplace stress did not "affect[] his ability to perform his job duties while employed at [the Agency][.]" *Id.* Persad does not plausibly allege severe or pervasive conduct, based on a protected trait, that altered the conditions of his employment and created an abusive environment.

Persad's hostile work environment claim is dismissed.

**D. Whistleblower Protection Act**

Persad also asserts a retaliation claim under the "Whistleblower Protection Act." *See* ECF 1, ¶¶ 23–25. Persad does not specify which "Whistleblower Protection Act" he claims the defendants violated. While there are Maryland laws that protect against retaliation and are often referred to as "Whistleblower Protection" acts, each protects state employees against retaliation by state employers. *See* Md. Code Ann., State Gov't § 20-606; Md. Code Ann., State Pers. & Pens. § 5-305; Md. Code Ann., State Fin. & Proc. § 11-303. Because Persad is a federal employee, the Court construes Persad to allege a retaliation claim under the federal Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b)(8)–(9).

The WPA provides, in relevant part, that "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not . . . take or fail to take . . . a personnel action with respect to any employee . . . because of" his whistleblowing activity. 5 U.S.C. § 2302(b)(8). The WPA's remedies for violations are limited to an administrative review process with the Merit Systems Protection Board ("MSPB"); the WPA does not confer a private cause of action in federal district court. *See* 5 U.S.C. § 1221(a) (whistleblower may "seek corrective action from the [MSPB]" for alleged retaliation); *see also id.* § 1214(a)(3) (aggrieved employee may "seek corrective action from the Special Counsel" and then from the MSPB, except in certain cases in which the aggrieved employee "has the right to appeal directly to the [MSPB]"); *see also Jones v. U.S. MSPB*, 103 F.4th 984, 996 (4th Cir. 2024) (explaining "how and where an alleged whistleblower can get relief" and noting that they may "seek corrective action from" the MSPB regarding "any personnel action taken" (quoting 5 U.S.C. § 1221(a))). After an employee seeks corrective action with the MSPB, "[t]he employee may seek judicial review of the Board's decision 'in the United States Court of Appeals for the Federal Circuit or any court of appeals of

competent jurisdiction.'" *Mikhaylov v. Dep't of Homeland Sec.*, 62 F.4th 862, 864 (4th Cir. 2023) (quoting 5 U.S.C. § 7703(b)(1)(B)); *Zachariasiewicz v. U.S. Dep't of Just.*, 48 F.4th 237, 242–43 (4th Cir. 2022).

Persad does not allege that he pursued the administrative review process under the WPA. Even if Persad had exhausted his administrative remedies, he could seek judicial review only in a federal court of appeals, not a federal district court. *See* 5 U.S.C. § 7703(b)(1)(B); *Mikhaylov*, 62 F.4th at 864. Accordingly, Persad's retaliation claim under the Whistleblower Protection Act must be dismissed. *See Harris v. Evans*, 66 F. App'x 465, 466, 466–67 (4th Cir. 2003) ("Dismissal of a [WPA] claim is appropriate when a plaintiff fails to exhaust his or her administrative remedies.").

## IV. Conclusion

Persad was given an opportunity to amend his initial complaint in response to the defendants' motion to dismiss his initial complaint, and he did not cure the pleading defects. The defendants' motion to dismiss is granted. The claims in Persad's amended complaint are dismissed with prejudice. Dismissal with prejudice is appropriate because Persad's failure to cure the pleading defects shows that another amendment would be futile. *See MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 114 (4th Cir. 2025) (dismissal with prejudice is appropriate when amendment would be futile), *cert. denied sub nom. MSP Recovery Claims v. Lundbeck LLC*, 223 L. Ed. 2d 240 (Nov. 24, 2025).

A separate Order shall issue.

September 9, 2026
Date

Deborah L. Boardman
United States District Judge